IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

JERRY S. MINOR,                     )
                                    )
          Petitioner,               )
                                    )
     v.                             )          Civil Action No. 3:08cv1012-MEF
                                    )                    (WO)
UNITED STATES OF AMERICA,           )
                                    )
          Respondent.               )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.   INTRODUCTION

Federal inmate Jerry S. Minor ("Minor") has moved for collateral review of his

conviction and sentence pursuant to 28 U.S.C. § 2255.  On February 16, 2006, a jury found

Minor guilty of manufacturing methamphetamine, 21 U.S.C. § 841(a)(1), using a firearm in

furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A), and using a destructive

device in furtherance of a drug trafficking crime, 18 U.S.C. § 921(a)(4)(A).  On June 30,

2006, the district court sentenced Minor to a total of 588 months in prison.  Minor appealed,[1]

and on June 5, 2007, the Eleventh Circuit affirmed his conviction and sentence in an

unpublished opinion.  *United States v. Minor*, 227 Fed.Appx. 863 (11th Cir. 2007).  Minor's

subsequent petition for rehearing en banc was denied on December 13, 2007, with the

mandate issuing on December 21, 2007.  Minor did not seek certiorari review in the Supreme

---

[1]On appeal, Minor argued that (1) the district court erred in denying his motion to suppress; (2) there
was insufficient evidence to sustain his convictions; and (3) the district court's finding that he was responsible
for 1.5 kilograms of methamphetamine was erroneous.

Court.

On December 17, 2008, Minor, filed this *pro se* § 2255 motion,[2] setting forth the

following claims:

1. Minor's right to a public trial by an impartial jury was denied when the jury was allowed to view evidence admitted during trial in the deliberation room, outside the view of Minor and the public, and when a government witness assisted in moving that evidence into the deliberation room and then commented on the evidence in the presence of the jury.

2. Counsel rendered ineffective assistance by failing to object when the jury was allowed to view evidence in the deliberation room and when a government witness assisted in moving that evidence into the deliberation room and then commented on the evidence in the presence of the jury.

3. Counsel rendered ineffective assistance by failing to file a motion to suppress Minor's post-arrest statement on grounds that he was mentally and emotionally incompetent at the time of his police interrogation and by failing to conduct an investigation into Minor's mental state at the time he gave his statement.

4. Counsel rendered ineffective assistance by failing to file a motion for a speedy trial and by failing to move to dismiss the indictment on grounds that Minor's speedy trial rights had been violated.

(Doc. Nos. 1 and 6.)

The government responds that Minor's claims are either procedurally barred or

---

[2]Although the § 2555 motion was date-stamped "received" in this court on December 22, 2008, Minor represents that he signed and placed the motion in the prison mailing system on December 17, 2008. Under the "mailbox rule," a *pro se* inmate's petition is deemed filed the date it is delivered to prison officials for mailing. *Houston v. Lack,* 487 U.S. 266, 271-72 (1988); *Adams v. United States*, 173 F.3d 1339, 1340-41 (11th Cir. 1999).

without merit.  (Doc. No. 8.)  Minor was afforded an opportunity to respond to the government's submission and has done so.  (Doc. Nos. 14 and 15.)  After due consideration of Minor's § 2255 motion, the supporting and opposing submissions, and the record in this case, the court concludes that an evidentiary hearing is not required and that, pursuant to Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*, the § 2255 motion should be denied.

## II.   DISCUSSION

### A.   General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to 28 U.S.C. § 2255 are extremely limited.  A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  "[A] non-constitutional error that may justify reversal on direct appeal does not generally support a collateral attack on a final judgment, unless the error (1) could

not have been raised on direct appeal and (2) would, if condoned, result in a complete miscarriage of justice." *Lynn*, 365 F.3d at 1232-33 (citations omitted); *Hill v. United States*, 368 U.S. 424, 428 (1962) (error of law does not provide basis for collateral attack unless claimed error constituted a "fundamental defect which inherently results in a complete miscarriage of justice."). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent."

### B.   Substantive Claim Not Raised on Direct Appeal

Minor contends that his right to a public trial by an impartial jury was denied when the jury was allowed to view certain evidence admitted during trial in the deliberation room, outside the view of Minor and the public, and a government witness assisted in moving that evidence into the deliberation room and then commented on the evidence in the presence of the jury.  (Doc. No. 1 at 5-5(b); Doc. No. 6 at 7-12.)  Minor did not raise this claim on direct appeal.  However, the facts he alleges to support this claim are the same facts he alleges in support of one of his independent claims of ineffective assistance of counsel, a claim in which he contends that his trial counsel was ineffective for failing to object to these matters. (*See* Doc. No. 1 at 6-7; Doc. No. 6 at 13.)  Accordingly, this court will address Minor's underlying substantive claim in the context of his related allegation of ineffective assistance

of counsel.[3]  This and all of Minor's allegations of ineffective assistance of counsel are reviewed below in this Recommendation..

## C.   Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel is governed by the standards of *Strickland v. Washington*, 466 U.S. 668 (1984).  *Grossman v. McDonough*, 466 F.3d 1325, 1344 (11th Cir. 2006).   Under *Strickland*'s two-part test, a petitioner must demonstrate (1) that "counsel's representation fell below an objective standard of reasonableness" and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (internal quotation marks omitted); *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Under the performance component of the *Strickland* inquiry, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms."  *Strickland*, 466 U.S. at 688.  In other words, criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance.  *Roe v. Flores-Ortega*, 528 U.S.

---

[3]Ordinarily, if an available substantive claim is not advanced on direct appeal, it is deemed procedurally barred in a § 2255 proceeding.  *See Mills v. United States*, 36 F.3d 1052, 1055-56 (11th Cir. 1994); *Greene v. United States*, 880 F.2d 1299, 1305 (11th Cir. 1989).  However, a claim that would normally be procedurally barred due to the failure to raise it on appeal may be presented in a § 2255 motion when couched as a claim of ineffective assistance of counsel.  *See Massaro v. United States*, 538 U.S. 500, 504 (2003).  Moreover, ineffective assistance of counsel may constitute "cause" excusing a procedural default, *see Greene*, 880 F.2d at 1305, but only if the claim of ineffective assistance is meritorious.  *Id.*  This involves a determination of the merits of the underlying substantive claim.  *See United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (to determine whether a claim of ineffective assistance of counsel has merit, court must determine whether claims counsel failed to raise were meritorious).

470, 476 (2000) (quoting *Strickland*, 466 U.S. at 687). In any ineffective assistance analysis, scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000); *see Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994). Review of an ineffective assistance of counsel claim is conducted from the perspective of defense counsel based on facts "as they were known to counsel at the time of the representation." *United States v. Teague*, 953 F.2d 1525, 1535 (11th Cir. 1992). The court will "avoid second-guessing counsel's performance: It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id*. (internal quotation marks and brackets omitted). Thus, "[g]iven the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." *Id*.

As noted above, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether

the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id.* at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *See Strickland*, 466 U.S. at 687. Accordingly, once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id.* at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998) ("if a defendant cannot satisfy the prejudice prong, the court need not address the performance prong").

A criminal defendant's right to effective assistance of counsel continues through direct appeal. *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Ineffective assistance of appellate counsel may be shown if the movant can "establish ... that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.... Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Mayo v. Henderson*, 13 F.3d 528, 533 (2nd Cir. 1994).

### 1. Counsel's Failure to Object to Jury's Viewing of Evidence in Deliberation Room and to Presence and Comments of Government Witness

Minor contends that his trial counsel rendered ineffective assistance by failing to object when the jury was allowed to view evidence in the deliberation room, outside the

view of Minor and the public, and when a government witness, Keith Jordan, an ATF Agent

and Investigator with the Lee County Sheriff's Office, assisted in moving that evidence into

the deliberation room and then commented on the evidence in the presence of the jury.

Minor maintains that his counsel's failure to object to these matters resulted in the denial of

his right to a public trial by an impartial jury.  (Doc. No. 1 at 6-7(b); Doc. No. 6 at 7-14.)

At the conclusion of the defense's case, the trial court, outside the presence of the

jury, suggested to the parties that certain items of physical evidence admitted at trial be

temporarily displayed for the jury prior to deliberations:

> THE COURT: ...  All right.  One other issue that we need to deal with,
> and that is the evidence.  We have a lot of guns here, ammunition.  We have
> some drugs.  We don't normally send drugs and guns back with the jury.  This
> is what I would propose to do, and that is this.  Charge the jury, argue to the
> jury, charge the jury, and then have one of the CSOs along with my courtroom
> deputy transport the firearms and the drugs back there and put them on the –
> in the jury room around the table, laid on the table and then allow the jurors
> to go in and look at the evidence walking around so they don't handle it with
> the CSO and my courtroom deputy present.  Once they've had a chance to
> look at it laying on the table, then bring them back out, remove the evidence,
> that type evidence, put it back here in the courtroom and of course instruct
> them that they can get it back any time they want it, but that that would give
> them an opportunity to see it.
>
> Does anybody have a problem with that?
>
> [PROSECUTOR]:  No objection from the Government, Your Honor.
>
> [DEFENSE COUNSEL]:  No objection, sir.

(Trial Transcript, Vol. 4 at 249-50.)

At the conclusion of closing arguments, the trial court instructed the jury as follows:

> THE COURT:  All right.  Ladies and gentlemen, if you will bear with

8

us just a couple of minutes, I will ask my courtroom deputy to assist the CSO and maybe a couple of the investigators there if they would help carry these firearms and clips and things like that.  And I want the lawyers to supervise placement of those in there and make sure all the exhibits that have been introduced into evidence get into the jury room.  Let's go ahead and set that up so we can have the jury walk around the table.

Ladies and gentlemen, let me make this clear what we are doing.  The only thing I am sending back there now are the firearms, the ammunition, the clips for the firearms, and the one bag that contains the actual controlled substance methamphetamine that was tested and – it was one bag; right?

[PROSECUTOR]:  That's right.

THE COURT:  The other bag containing the other items of evidence, for example, the testimony about pseudoephedrine blister packs and all those things will come back in the second batch of evidence that will be back with you when you deliberate.  And the two things that will not will be the guns.  Those items I am putting back there now will come back out here and will stay here unless you want to see it.  And then the two – is it two bullet-proof vests on the floor, a black one and camo-looking one?  Those will stay on the floor unless you want to see them back there, and then we will make arrangements for gloves and what not.  Okay.  It's just if someone has some sensitivity to pepper spray or whatever it was, I just don't want you to get around it.

All right.  Did the lawyers check those exhibits?

[DEFENSE COUNSEL]:  Yes, sir.

THE COURT:  Is everybody satisfied what's going on?

[PROSECUTOR]:  Yes, sir.

THE COURT:  All right.  Take them on back, please.

Are we ready?

[PROSECUTOR]:  Yes, Your Honor.

THE COURT:  Ladies and gentlemen, if you would, go to the jury room.  You can leave your pads here and your stuff here because you will be

coming right back out.

>    And please don't ask the CSOs or anybody any questions, okay?

>    (2:40 P.M. Jury leaving courtroom.)

>    (3:14 P.M. Jury enters courtroom.)

(Trial Transcript, Vol. 4 at 274-76.)

The record reflects that the jury began its deliberations at 3:40 p.m. and returned its verdict at 4:22 p.m.  (Trial Transcript, Vol. 4 at 298, 301.)

Minor contends that his trial counsel rendered ineffective assistance by failing to object to the process of displaying evidence described above. (E.g., Doc. No. 1 at 7(a).)  He argues that this process violated his right to a public trial, because the jury was allowed to view the evidence outside his view and that of the public.  (E.g., Doc. No. 1 at 5(a).)  In addition, he argues that by allowing Agent Jordan to assist in moving the evidence into the deliberation room, the trial court improperly bolstered "the testimony and overall credibility" of Jordan, who he says was a key expert witness for the government during the trial.[4]  (E.g., Doc. No. 1 at 5(a).)  He also alleges that Agent Jordan "commented on the evidence being displayed in the presence of jurors."  (*Id.*)

Pursuant to the orders of this court, Minor's counsel at trial, John M. Poti, filed an affidavit in which he addresses Minor's allegations, in pertinent part, as follows:

>    Minor contends that he was denied effective assistance of counsel when

---

[4] Agent Jordan testified about his participation in Minor's arrest and the search of his residence, as well as a statement Minor gave to him the day after he was arrested.  (*See* Trial Transcript, Vol. 4 at 188-236.)

I failed to object when government witness ATF agent Jordan assisted CSOs with setting up exhibits in the jury deliberation room.  Minor claims that the jury was allowed to inspect the evidence outside of his presence for 34 minutes and within hearing of comments made by Agent Jordan.

At the conclusion of closing arguments, the trial judge ordered certain trial exhibits to be taken to the jury deliberation room.  Because of the sheer number of firearms, the Court ordered the firearm exhibits to be taken to the deliberation room and spread out so they could be viewed by the jury.  There was not enough space in the jury deliberation room for the firearm exhibits, other exhibits, and the jury all at once.  Thus, the Court ordered the firearms placed in the room first to be reviewed/examined by the jury, and then removed so that there was room for the other exhibits to the deliberation room. The court CSOs and Agent Jordan assisted in moving the exhibits to the deliberation room.  Government counsel, Mr. David Cooke, and myself observed the entire process.  At no time did the CSOs or Agent Jordan make comments concerning the evidence in the presence of the jury, and at no time did the jurors make comments or attempt to question the Agent.  See Trial Transcript pgs. 274-276.  All items placed in the deliberation room were properly admitted into evidence.

(Doc. No. 3 at 3-4.)

A trial court may, in its discretion, send all or part of the exhibits admitted into evidence a trial to the jury room before or after the jury has begun deliberations.  *See Schlange-Schoeningen v. Parrish*, 767, 794 F.2d 788 (11th Cir. 1985); *United States v. Stone*, 472 F.2d 909, 914 (5th Cir. 1973); *United States v. Riebold*, 557 F.2d 697, 706 (10th Cir. 1977); McCormick on Evidence § 217, p. 539 (192).  The process for displaying the evidence in Minor's case was a product of the exigencies brought about by the nature and number of exhibits admitted into evidence (drugs and numerous guns).  As indicated in Poti's affidavit, all items placed in the deliberation room were properly admitted into evidence during the trial; Minor does not argue otherwise.  The jury was entitled, and in fact

11

obligated, to view all the evidence introduced at trial.  The trial court's instructions to the jury regarding the exhibits displayed in the deliberation room were given in open court, in the presence of Minor, his counsel, and the public.  It was therefore proper to allow the jury to view the evidence, and the manner is which the evidence was displayed in no way violated Minor's right to a public trial.

It is clear, moreover, that Minor's allegation that Agent Jordan commented on the evidence in the presence of jurors is nothing more than bald speculation that is unsupported by any record evidence.  For his part, Minor acknowledges that he was unable to observe the events in question because they occurred in the deliberation room, outside his presence.[5] The trial court specifically instructed jurors not to ask anyone any questions during their viewing of the evidence.  Minor's trial counsel, Mr. Poti, avers in his affidavit that he observed the entire process and that at no time did Agent Jordan or anyone else comment on the evidence in the presence of the jury, and at no time did the jurors make comments or attempt to question Agent Jordan.  (Doc. No. 3 at 3.)  Minor points to no facts, apart from his unsupported and wholly speculative allegation that Agent Jordan commented on the evidence, indicating any impropriety by Agent Jordan or suggesting that there was an invasion of the province of the jury resulting from Agent Jordan's presence.

Finally, this court does not accept Minor's contention that Agent Jordan's mere act of moving the evidence into the deliberation room at the trial court's direction operated to

---

[5]Minor does not elaborate on the specific contents of Agent Jordan's alleged comments, nor does he explain how he came to learn that Agent Jordan made such comments.

bolster Jordan's testimony in the eyes of the jury.   Minor relies, in part, on *Turner v. Louisiana*, 379 U.S. 466, 473 (1965), in which the Supreme Court held that prejudice was inherent in the "continuous and intimate association" between two sheriff deputies who were key prosecution witnesses and custodians of the sequestered jurors.   Minor's reliance on *Turner* is misplaced.   Unlike *Turner*, in this case Agent Jordan's contact with the jury was brief, and there was no "continuous and intimate association" between Agent Jordan and the jury.   Agent Jordan's "contact" with the jury was limited to his performance of a ministerial task, and there is no evidence whatsoever of communication of any nature between Agent Jordan and the jurors.   Under the circumstances, there is no reasonable possibility that Agent Jordan's actions had any effect on the outcome of Minor's trial.   *See United States v. Harrell*, 788 F.2d 1524, 1528 (11th Cir. 1986) (finding no prejudice against defendant where expert witness for government, under instruction from trial court, entered jury room during deliberations and explained to members of jury the use of equipment so that jurors could use a mini cassette if they saw fit to do so).

For the reasons set forth above, Minor fails to establish that his counsel rendered ineffective assistance by failing to object to the process used to display evidence to the jury and when Agent Jordan assisted in moving the evidence to the deliberation room.   Minor demonstrates neither deficient performance by counsel nor prejudice resulting from counsel's actions.   Therefore, he is not entitled to any relief based on this claim.[6]   *See*

---

[6]On December 3, 2010, Minor filed a motion to amend ground two of his § 2255 motion which the
(continued...)

*Strickland*, 466 U.S. at 687-89.

### 2.    Counsel's Failure to File Motion to Suppress Post-arrest Statement

Minor contends that his trial counsel rendered ineffective assistance by failing to file a motion to suppress his post-arrest statement to Agent Jordan on grounds that he was mentally and emotionally incompetent when he was interrogated.  (Doc. No. 1 at 4-4(a); Doc. No. 6 at 1-7.)  Minor maintains that his statement was not voluntary because he was under the influence of alcohol and drugs and on suicide watch when he gave the statement. He contends that he informed his trial counsel, Mr. Poti, of these facts and requested that he file a motion to suppress his statement, but that Poti refused to do so.  Minor further alleges that Poti failed to conduct any investigation into his mental state at the time he gave his statement and that his failure to do so was prejudicial.

In his affidavit filed with this court, Poti addresses Minor's claim as follows:

> Minor contends that I failed to move for suppression of his post-arrest statement.  He states that he was mentally and emotionally incompetent at the time of his police interrogation because he was under the influence of alcohol, mind-altering drugs, and he was on suicide watch.  Minor contends that he asked me to move for suppression based on the above.
>
> As stated earlier, Minor was initially represented by Ms. Jennifer Hart

---

[6](...continued)

court subsequently granted. In this amendment Minor  recasts his arguments claiming that allowing a "key witness" to enter the jury room after testifying is "jury tampering" as well as inconsistent with the court's own instructions to the jurors about contact with witnesses.  Minor further complains that his lawyer failed to object to the "jury tampering" or take any other appropriate action such as requesting a curative instruction or moving for a mistrial.  Minor's arguments present no substantive amendments which need be separately considered by the court.  Lacking both evidentiary or substantive support his recast arguments suffer from the same defects as his original claims.

of the Federal Defenders Office.  Ms. Hart represented Minor from March 30, 2005, to July 14, 2005, when she filed a motion to withdraw due to a conflict of interest.  Mr. [Michael] Petersen was a panel attorney at the time and was appointed to take over representation of Minor.  Mr. Petersen represented Minor from July 14, 2005 to November 3, 2005, when he was hired by the Federal Defenders Office and was subject to the same conflict of interest that initially affected Ms. Hart's representation.  During his representation of Minor. Mr. Petersen filed a *Motion to Suppress Search of Defendant's Residence and Curtilage* on September 27, 2005 (DOC. # 31).  I took over representation on November 3, 2005, and represented Minor through trial, sentencing, and appeal.  The first time Minor discussed with me the issue of his state of mind during his post-arrest statement was a few days before his February 13, 2006 trial.  I contacted Mr. Petersen to see if he had discussed this issue with Minor during his representation of him.  He stated that this was the first he had heard of the issue.  Minor first brought the issue up nearly 11 months after his initial arrest and after two other lawyers were on the case. Ms. Hart and Mr. Petersen are both competent attorneys and well known by the Court.  If this had truly been an issue, they would have pursued the issue earlier in their representation of Minor.   While counsel has a duty to investigate plausible lines of defense and issues for his client, I thought Minor's last minute revelation was a misleading attempt to delay trial, due to the timing and my discussions with previous counsel.

(Doc. No. 3 at 2-3.)

At trial, Poti cross-examined Agent Jordan as follows:

Q.    When you were taking the statement, the alleged statement from Mr. Minor, was he handcuffed?

A.    Probably.  I don't recall for sure, but I recall that we were in – we have two securable interview rooms in our facility and then we have an unsecured conference room.  And we were in the conference room, and typically when we are in there with a defendant, we tend to keep them handcuffed.  So I don't recall, but it's probable.

Q.    Was he wearing any sort of straitjacket or anything like that?

A.    No.  He was wearing a paper gown that we issue to inmates that have made suicidal threats in the jail.

Q.     So he was on suicide watch; isn't that correct?

A.    The night before, he had been, yes.

Q.    So he might not have been in his right mind when he allegedly made this statement; is that true?

A.     I am not qualified to answer that.

(Trial Transcript, Vol. 4 at 235-36.)

During the prosecutor's redirect examination of Agent Jordan on the issue of Minor's state of mind at the time of his statement, the following exchange occurred:

Q.    Did he do anything to indicate to you that he wasn't in his right mind at the time of the statement?

A.    No.

Q.    Were you concerned in any way that he might not be coherent or in his right mind?

A.    No.

Q.    And would that have been important to you, if he appeared to be like he wasn't in his right mind at the time he made the statement?

A.    Oh, absolutely.

(Trial Transcript, Vol. 4 at 236.)

Minor's assertion that the influence of drugs, alcohol, and suicidal ideations rendered him "mentally and emotionally incompetent" is not enough to establish the involuntariness of his statement to Agent Jordan or his inability to understand and waive his *Miranda* rights. The law requires more than mere intoxication or mental illness to render a confession involuntary.  In *Colorado v. Connelly*, 479 U.S. 157, 161-70 (1987), the Supreme Court

16

upheld the murder conviction of a defendant suffering from schizophrenia who confessed to a police officer after the "voice of God" instructed him either to confess to the murder or to commit suicide. The Court held the confession voluntary because the compulsion to confess was not accompanied by "coercive police activity." 479 U.S. at 164-67. Minor does not allege that he was forced to speak or mistreated in any way or that law enforcement took advantage of his alleged intoxication or depressed state of mind in questioning him. Nor does the record reveal any evidence of police coercion. "In the context of the voluntariness of a confession, a defendant's mental state by itself and apart from its relation to official coercion never disposes of the inquiry into constitutional voluntariness." *United States v. Palmer*, 203 F.3d 55, 61-62 (1st Cir. 2000). There is nothing in the record to support a conclusion that Minor's statement to Agent Jordan was not given freely and willingly following a valid waiver of his *Miranda* rights. Agent Jordan testified at trial that there was nothing to indicate Minor was not "in his right mind" or might not be coherent at the time he gave his statement. Because there is no allegation or suggestion of coercive police activity here, Minor cannot demonstrate that a motion to suppress his statement as involuntary would have been successful. Likewise, he cannot show that his counsel was ineffective for failing to file such a motion or that counsel's failure to conduct further investigation into his mental state[7] was prejudicial.

---

[7]The value of such further investigation is entirely speculative, and Minor does not suggest what additional information such investigation might have yielded other than jail records regarding the suicide watch he was placed under while incarcerated. Minor's counsel elicited testimony concerning this matter when cross-examining Agent Jordan at trial.

Moreover, it is apparent from Poti's affidavit that he believed Minor was not being truthful about the circumstances of his confession and that Minor had brought up the issue only as a last-minute attempt to delay his trial.  This belief by Poti was not unreasonable, as Minor first raised the issue almost eleven months after his initial arrest, a few days before his trial date, and had not mentioned the issue to the two attorneys who represented him prior to Poti.  Under the circumstances, Poti could reasonably have opted to forego a suppression hearing, where Minor may have presented testimony Poti believed to be perjured, and to instead cross-examine Agent Jordan at trial about the circumstances under which Minor gave his statement.  In that cross-examination, Poti elicited evidence that Minor had been placed on suicide watch while in jail, and he attempted to adduce testimony from Agent Jordan suggesting that Minor "might not have been in his right mind" when he gave his statement. The tactical decision to seek to cast doubt on the weight of Minor's confession during cross-examination of Agent Jordan, while avoiding the presentation of false evidence through Minor at a suppression hearing, was not unreasonable under the circumstances. Consequently, Minor fails to establish that his counsel's performance was deficient or that he was prejudiced by that performance, and he is not entitled to any relief based on this claim of ineffective assistance counsel.  *Strickland*, 466 U.S. at 687-89.

### 3.  *Counsel's Failure to Protect Speedy Trial Rights*

Minor contends that his trial counsel rendered ineffective assistance by failing to file a motion for a speedy trial and by failing to move to dismiss the indictment on grounds that Minor's speedy trial rights had been violated.  (Doc. No. 1 at 8-8(c); Doc. No. 6 at 15-18.)

18

Title 18 § 3161(c)(1), part of the Speedy Trial Act, requires that the trial of a defendant pleading not guilty to the charges in an indictment "shall commence within seventy days from the filing date ... of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs."  Minor was indicted on February 9, 2005; he was arraigned on March 30, 2005.  Therefore, § 3161(c)(1) required that his trial commence no later than seventy days after March 30, 2005, unless there were periods of delay properly excluded under 18 U.S.C. § 3161(h).  Although Minor did not go to trial until February 13, 2006, all periods of delay were excludable under the statute.

Title 18 § 3161(h)(7)(A) provides that, for purposes of the Speed Trial Act, any period of delay resulting from a continuance granted on the basis of the trial court's findings that "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial" shall be excluded in computing the time within which a trial must commence.  *See* 18 U.S.C. § 3161(h)(7)(A).  In Minor's case, the court, on April 1, 2005, set the original trial date for July 25, 2005, which was outside § 3161(c)(1)'s seventy-day window, but explained that the reason for this trial date was to ensure that counsel had adequate time to prepare for trial, a permissible reason for delay under § 3161(h)(7)(B)(ii) and (iv).  (Gov. Exh. I at 2.)   The court specifically found, pursuant to § 3161(h)(7)(A), that the ends of justice served by the continuance outweighed the public's

19

and Minor's interests in a speedy trial.[8]  (*Id*.)

The court granted two additional continuances of Minor's trial when his original lawyer, Jennifer Hart, and then substitute counsel, Michael Petersen, had to withdraw from the case due to conflicts of interest.  The first continuance for this purpose was from July 25, 2005, to November 7, 2005, when Petersen replaced Hart as Minor's counsel.  (Gov. Exh. Q.)  In granting this continuance, the court explained that it was necessary to ensure that new counsel had adequate time to prepare for trial.  (*Id*.)  Again, the court specifically found that the ends of justice served by the continuance outweighed the public's and Minor's interests in a speedy trial.[9]  (*Id*.)  On November 3, 2005, the court granted a second continuance for this purpose – from November 7, 2005, to February 13, 2006 – when Poti replaced Petersen as Minor's counsel.  (Gov. Exh. X.)  As was the case when Petersen replaced Hart, the court again explained that a continuance was necessary to ensure that new counsel, Poti, had adequate time to prepare for trial.[10]  (*Id*.)  Once again, the court specifically found that the ends of justice served by the continuance outweighed the public's and Minor's interests in

---

[8]The record also reflects that on March 31, 2005, the day before the court granted the continuance, Minor filed a written speedy trial waiver, signed by him and his original counsel, Ms. Hart, in which Minor agreed to waive his right to a speedy trial and stated that he was doing so "knowingly, voluntarily and, intelligently" after receiving a "full and complete explanation of each and every one [of his rights] ... by [his] attorney."  (Gov. Exh. H.)  Of course, a criminal defendant's prospective waiver of his speedy trial rights is ineffective.  *Zedner v. United States*, 547 U.S. 489 (2006).  A court may exclude time from the speedy trial deadline only for the reasons set forth in 18 U.S.C. § 3161(h), including as was done in Minor's case the so-called "ends of justice" exclusion.  18 U.S.C. § 3161(h)(8).

[9]On July 25, 2005, Minor filed a second written speedy trial waiver, this one signed by him and his then counsel, Mr. Petersen.  (Gov. Exh. P.)

[10]Poti was appointed to represent Minor on November 3, 2005.  Had the court not continued the trial date from November 7, Poti would have had only four days to prepare for trial.

a speedy trial.[11]  (*Id*.)

The delay occasioned by the "ends of justice" continuances to allow counsel time to prepare for the Minor's trial encompassed the period of time between the granting of the first continuance, on April 1, 2005, and commencement of the trial, on February 13, 2006.  When that delay is excluded from the speedy-trial calculation, it is clear that Minor's trial was timely for purposes of the Speedy Trial Act.  Thus, there was no basis for Poti to move to dismiss the indictment on grounds that Minor's speedy trial rights had been violated.  Because the record demonstrates that Minor's speedy trial rights were not violated, his claim of ineffective assistance of counsel should be denied.

Moreover, Minor does not demonstrate any prejudice with respect to this claim.  Had the continuances not been granted in his case, Minor's alternative would have been to proceed to trial with counsel who had insufficient time to prepare his defense.  Minor does not allege, much less demonstrate, that the outcome of the proceedings would have been different and to his advantage had the proceedings not been delayed.  *See West v. United States*, 228 Fed.Appx. 890, 896-97 (11th Cir. 2007) (unpublished) ("The record shows that the speedy trial waiver was executed, in large part, so that West's defense team could investigate, locate, and interview numerous, geographically-dispersed witnesses.  More important, while West argues that forcing the government to trial could be a benefit to a defendant in a case of this magnitude, he has not alleged that the outcome of the trial would

---

[11]On November 29, 2005, Minor filed a *pro se* Motion for Speedy Trial Proceeding.  (*See* Case No. 3:05cr46, Doc. No. 54.)  On December 5, 2005, the trial court denied the motion as untimely filed.  (Case No. 3:05cr46, Doc. No. 55.)

have been different had West's attorneys not directed him to sign the speedy trial waiver. As such, there is nothing to demonstrate that West suffered any prejudice as a result of his waiver of his speedy trial rights.").

In his reply to the government's answer, Minor also asserts that his right to a speedy indictment pursuant to 18 U.S.C. § 3161(b) was violated because he was indicted on February 9, 2005, more than 30 days after his arrest by state authorities on January 6, 2005.[12] (Doc. No. 14 at 2-5.) He then argues that his original two attorneys, Hart and Petersen, were ineffective for failing to assert this claim and for advising him to waive his right to a speedy trial. (*Id.*) He likewise argues that Poti was ineffective for failing to assert this claim after he was appointed.[13] (*Id.* at 5.) However, the thirty-day period under § 3161(b) does not begin to run until a defendant held by state authorities is taken into federal custody on a federal arrest warrant. *See United Sates v. Shahryar*, 719 F.2d 1522, 1524-25 (11th Cir. 1983); *United States v. Bloom*, 865 F.2d 485, 489-91 (2nd Cir. 1989). Minor was not taken into federal custody until March 18, 2005, when a federal arrest warrant that issued pursuant to his indictment was returned executed. (*See* Case No. 3:05cr46, Doc. No. 10.) Thus, the record establishes that there was no violation of Minor's speedy indictment rights under 18

---

[12]Section 3161(b) provides, in pertinent part:

Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges.

[13]This court considers Minor's allegations in his reply to the government's answer regarding the purported speedy indictment violation to be a clarification of allegations he presented in his § 2255 motion, and not a new claim.

U.S.C. § 3161(b).  As such, his counsel was not ineffective for failing to assert such a claim, and Minor is not entitled to any relief based on this claim.

**D.      Time-barred Claims**

In his reply to the government's answer, Minor also claims, for the first time, that his initial arrest by state authorities, on January 6, 2005, was unlawful because there were defects and misstatements in the initial criminal complaint and the accompanying affidavit and that his subsequent incarceration by federal authorities was unlawful because there were defects in the first federal arrest warrant sworn out against him.  (Doc. No. 14 at 1-4.)  Minor then argues that each of the three attorneys who represented him at different times rendered ineffective assistance of counsel by failing to raise these claims.  (*Id.* at 1-5.)  Assuming that this is an attempt by Minor to amend his § 2255 motion by adding new claims, his attempt comes too late.  The new claims are time-barred because they were first raised more than a year after Minor's conviction became final and they do not relate back to any claims in his timely filed original motion.

The Federal Rules of Civil Procedure provide for the relation back of amendments filed after the running of a period of limitation in certain circumstances.  Rule 15(c) of the Federal Rules of Civil Procedure provides that "[a]n amendment of a pleading relates back to the date of the original pleading when ... the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."  *See* Fed.R.Civ.P. 15(c)(2).  "'Relation back' causes an otherwise untimely claim to be considered timely by treating it as if it had been filed when

the timely claims were filed." *Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000). "The rationale of Rule 15(c) is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide." *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 150 n.3 (1984).

On direct appeal, the Eleventh Circuit affirmed Minor's conviction, by unpublished opinion, on June 5, 2007. *United States v. Minor*, 227 Fed.Appx. 863 (11th Cir. 2007). Minor's subsequent petition for rehearing en banc was denied on December 13, 2007, and the appellate court mandate issued on December 21, 2007. Minor did not seek certiorari review in the Supreme Court. Thus, Minor's conviction became final on March, 12, 2008, 90 days after the denial of his petition for rehearing en banc (on December 13, 2007). *See Bond v. Moore*, 309 F.3d 770, 772 (11th Cir. 2002). *See also Clay v. United States*, 537 U.S. 522, 526-27 (2003) (the 90 days allowed for filing a petition for writ of certiorari begins on the date the appellate court issues its opinion on the direct appeal, not from the date the appellate court issues its mandate). Minor's one-year time period for filing a § 2255 motion began to run on March 12, 2008. Accordingly, Minor had until March 12, 2009, to file a § 2255 motion that was timely under § 2255's one-year limitation period. He filed his § 2255 motion on December 17, 2008. Therefore, the claims in his § 2255 motion were timely raised. However, he first presented his new claims (in his reply to the government's answer) on April 2, 2009 – after § 2255's one-year deadline had expired. Thus, his new claims are untimely under the one-year limitation period and are barred from review unless they "relate

24

back" to his timely asserted claims under Fed.R.Civ.P. 15(c).

New claims asserted in an amendment do not relate back to timely asserted claims where they arise from conduct and occurrences separate from the conduct and occurrences forming the basis of the timely asserted claims. *See Davenport*, 217 F.3d at 1346. Minor's original § 2255 motion alleged deficiencies in the trial proceedings and deficiencies of representation by counsel involving occurrences and conduct distinctly separate from the deficiencies alleged in his new claims. His new claims bear no legal or factual relationship to his earlier claims, and there is nothing in Minor's earlier claims that would have provided notice of his new claims. "Congress did not intend Rule 15(c) to be so broad as to allow an amended pleading to add an entirely new claim based on a different set of facts." *Pruitt v. United States*, 274 F.3d 1315, 1317 (11th Cir. 2001). Because Minor's new claims do not "relate back" under Rule 15(c), they barred from review because they are untimely under § 2255's one-year limitation period. *See Farris v. United States*, 333 F.3d 1211, 1215-16 (11th Cir. 2003); *Pruitt*, 274 F.3d at 1319.

Although Minor contends that his delay in asserting his new claims is justified by the fact that he did not discover the alleged defects in the complaint and warrant until he reviewed these documents after they were attached as exhibits to the government's answer to his § 2255 motion (*see* Doc. No. 14 at 6), these documents were a part of the record in his criminal case, and there is no evidence that Minor exercised due diligence in his search for the factual predicate of his new claims. Minor's lack of due diligence precludes this court from equitably tolling the limitation period with regard to his new claims or from applying

the limitation period of 28 U.S.C. § 2244(d)(1)(D) to these claims.  When applying § 2244(d)(1)(D) , the operative date for limitations purposes is "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."

Finally, and in any event, Minor's new claims are frivolous.  Minor asserts that the criminal complaint sworn out by Agent Jordan was defective because it contained misstatements that "visibly misrepresent the truth." (Doc. No. 14 at 2.)  In particular, Minor contends that the face of the complaint alleges that the charged offense – specifically, firearm possession in furtherance of a drug trafficking crime – occurred on January 7, 2005, while Agent Jordan's averments in the accompanying affidavit reflect that Minor's firearms were discovered and seized by officers during a January 4 search of his residence.  However, Minor misquotes the complaint, which actually states that his alleged offense occurred "[o]n or about January 7, 2005." (Gov. Exh. A at 1.)  Moreover, the accompanying affidavit reflects that Minor was arrested on January 6, and that sometime after he was arrested, further searches of the residence uncovered additional firearms. (*Id*. at 2-3.)

As for the alleged defect in the first federal arrest warrant sworn out against Minor, the matter is of no consequence because the first warrant was returned unexecuted.  A subsequent warrant, pursuant to which Minor was taken into federal custody, did not suffer from the infirmity Minor alleges was in the first warrant.  Moreover, even if Minor's arrest and subsequent detention was unlawful, it is well established that an illegal arrest or detention does not void a subsequent conviction. *Gerstein v. Pugh*,  420 U.S. 103, 119

(1975).  Because Minor's claims regarding misstatements and defects in the complaint and warrant are frivolous, his attorneys were not ineffective for failing to raise such claims.

### III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the § 2255 motion filed by Minor be denied.

It is further

ORDERED that the parties shall file any objections to this Recommendation **on or before January 20, 2011**.   A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*).

Done this 6th day of January, 2011.


       _____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE